**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT WINCHESTER**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 4:24-cr-23-1 |
| | ) | |
| v. | ) | Judge Atchley |
| | ) | |
| SCOTT AUSTIN MOONEYHAM | ) | Magistrate Judge Dumitru |
| | ) | |

## MEMORANDUM OPINION AND ORDER

On February 2, 2026, United States Magistrate Judge Michael J. Dumitru issued a Report and Recommendation ("R&R") [Doc. 221] recommending Defendant Scott Austin Mooneyham's Motion to Suppress Evidence [Doc. 217] be denied. Defendant lodged objections to the R&R on March 2, 2026. [Doc. 225]. For the reasons explained below, Defendant's Objections [Doc. 225] will be **OVERRULED**, the Report and Recommendation [Doc. 221] **APPROVED** and **ADOPTED**, and Defendant's Motion to Suppress [Doc. 217] **DENIED**.

### I.      STANDARD OF REVIEW

This Court is required to perform *de novo* review of any objections to an R&R. 28 U.S.C. § 636(b); *United States v. Quinney*, 238 F. App'x 150, 152 (6th Cir. 2007) ("It is well-settled that upon proper objection by a party, a district court must review de novo a magistrate judge's ruling on a motion to suppress."). The Court can accept, modify, or reject the findings or recommendations – in whole or in part. *Logan v. City of Chattanooga, Tenn.*, 2019 WL 4888890, at *1 (E.D. Tenn. Oct. 3, 2019).

### II.      FACTUAL AND PROCEDURAL BACKGROUND

On September 21, 2024, Detective Nickolas Madore, a law enforcement officer in the Rutherford County Sherriff's Office Narcotics Unit, submitted an Affidavit in support of a warrant to search 2117 Victory Gallop Lane, Murfreesboro, Tennessee ("the Premises") to Judge James

1

A. Turner. [Doc. 217 at 1 and Doc. 221 at 1]. Judge Turner received the Affidavit and issued the

search warrant the same day. [Doc. 217-1 at 2-3, 8]. The Affidavit states, in pertinent part:[1]

> In late May, 2024, Detective (Det.) Madore with the Rutherford County Sherriff's Office, Narcotics Unit initiated an investigation into Scott Mooneyham. Det. Madore had received information from Special Agent Lance Walker with the Tennessee Bureau of Investigations (TBI), advising that Mooneyham is selling large quantities of methamphetamine from his residence located at 2117 Victory Gallop Lane, Murfreesboro TN.
>
> Detectives with the Rutherford County Sheriff's Office, Narcotics Unit conducted surveillance at the residences over the course of several days. On July 24, 2024, Det. Madore observed a known associate of Mooneyham's, Edward Welch leave the residence of 2117 Victory Gallop and enter into a blue Audi SUV owned and registered to Scott Mooneyham. Det. Madore observed Welch open the hood of the SUV and place a clear gallon sized zip-lock bag under the hood compartment of the SUV. The contents of the zip-lock bag appeared to be a large quantity of methamphetamine. After Welch had placed the zip-lock bag within the engine compartment of the SUV. Welch entered into the driver seat and left the area in the SUV, as the only occupant. Detectives attempted a follow of Welch but lost him shortly after he exited onto the main road. Detectives with the Coffee County Sherriff's Office located the SUV driven by Welch and conducted a traffic stop. Detectives with Coffee County Sheriff's Office conducted an interview of Welch. Welch advised that he had placed marijuana under the hood of the vehicle. Welch advised that he felt as if he was being followed so he (Welch) pulled over and threw the package into a yard on an unknown street.
>
> Within the last seventy-two hours, Detectives with the Rutherford County Sheriff's Office, Coffee County Sherriff's Office and Special Agent's with the TBI conducted a controlled purchase of a felony amount of methamphetamine from Scott Mooneyham. The Narcotics purchase took place within the residence of 2117 Victory Gallop Lane, Murfreesboro TN. The narcotics purchase was monitored and recorded by law enforcement.

[Doc. 217-1 at 5-6].

On September 23, 2024, police executed the warrant at the Premises. [Doc. 217 at 1 and

Doc. 221 at 1]. Defendant was detained in the back of a police cruiser about 30 feet away from the

---

[1] The affidavit is set forth as written. No corrections have been made for typographical errors.

2

Premises while officers executed the warrant. [Doc. 221 at 2]. While detained in the police cruiser, Defendant repeatedly requested but never received a copy of the search warrant. [*Id.*].

On January 13, 2026, Defendant filed a Motion to Suppress Evidence, seeking to suppress all evidence obtained as a result of the search. [Doc. 217]. On February 2, 2026, Magistrate Judge Dumitru issued a Report and Recommendation ("R&R") [Doc. 221], recommending Defendant's motion be denied.

### III.    ANALYSIS

Defendant raises five objections to the Report and Recommendation. [Doc. 225]. Defendant objects to the Magistrate Judge's finding that: (1) there was probable cause to support issuance of the warrant; (2) there was a sufficient nexus between alleged criminal conduct and the Premises; (3) the execution of the warrant was reasonable; (4) there was no evidence that Judge Turner rubber-stamped the warrant application; and (5) the *Leon* good faith exception would apply even if a Fourth Amendment violation had occurred.

#### 1.  Sufficiency of Affidavit / Probable Cause Determination

Defendant objects to the Magistrate Judge's finding that the facts set forth in the Affidavit were sufficient to establish probable cause to search the Premises. [Doc. 225 at 1–3]. The Magistrate Judge found three averments in the Affidavit to be significant: (1) the tip received from the Tennessee Bureau of Investigation that Defendant was selling methamphetamine from the Premises, (2) Detective Madore's observation of Edward Welch leaving the Premises and placing what appeared to be methamphetamine inside Defendant's vehicle, and (3) the controlled purchase of methamphetamine from Defendant inside the Premises. [Doc. 217-1 at 5–8 and Doc. 225 at 1–3]. Relying on *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005), Defendant argues that these three events do not establish probable cause. [Doc. 225 at 1–3].

3

"Probable cause exists when there is a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Brown*, 732 F.3d 569, 573 (6th Cir. 2013) (citations and internal punctuation omitted). "A magistrate's determination of probable cause is afforded great deference by the reviewing court," *United States v. Greene*, 250 F.3d 471, 478 (6th Cir. 2001), and the "warrant must be upheld as long as the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing," *United States v. Lee*, 48 F. App'x 184, 186 (6th Cir. 2002) (citation omitted, cleaned up). The Supreme Court has often recognized that affidavits "are normally drafted by nonlawyers in the midst and haste of a criminal investigation." *Illinois v. Gates*, 462 U.S. 213, 235 (1983). So "[t]echnical requirements of elaborate specificity" do not apply to evaluating probable cause in a search warrant. *Id.* Finally, "review of sufficiency of the evidence supporting probable cause is limited to the information presented in the four corners of the affidavit." *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006) (citing *Frazier*, 423 F.3d at 531).

    a.   Reliability of the TBI Tip

Defendant first suggests the Magistrate Judge erred by giving "any evidentiary weight . . . to the accusatory and conclusory tip" from Special Agent Walker, "simply because the source is from a law enforcement agency." [Doc. 225 at 1-2]. Defendant contends the Fourth Amendment analysis "turns on what information was conveyed and how it was obtained, not on the institutional status of the source." [*Id.*]. As the Government argues, "the R&R did not treat the tip as independently sufficient," [Doc. 226 at 3], but as part of the totality of the circumstances analysis.

The Court agrees with the Magistrate Judge that the proper focus of the probable cause inquiry here is not how TBI learned of Defendant's alleged conduct. "Rather, for the purpose of determining probable cause, the Court focuses on the fact that Detective learned from a law

4

enforcement agency (as opposed to, say, a confidential informant) that Defendant was selling methamphetamine from the Premises." [Doc. 221 at 6]. For the warrant to issue, Detective Madore had to "present evidence from which the magistrate judge can conclude from the totality of the circumstances, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Williams*, 224 F.3d 530, 532 (6th Cir. 2000) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983) (internal punctuation omitted, cleaned up).

Here, Detective Madore identified his informant by name as Special Agent Lance Walker of the TBI, a law enforcement agency responsible for investigating serious crimes, supporting local law enforcement, and providing forensic services. *See United States v. McCraven*, 401 F.3d 693, 697 (6th Cir. 2005) (affidavit based on informant's tip often supports finding of probable cause, so long as informant is reliable). While the name and position of the tipster are perhaps suggestive of reliability and basis of knowledge, clearly the TBI tip standing alone would not be enough to support probable cause. Defendant would have the Court view this averment in isolation, but the TBI tip is just one piece of the totality of the circumstances analysis.

b. Surveillance of Edward Welch

Defendant next objects to "the Welch incident" as corroboration of drug trafficking at the Premises. [Doc. 225 at 2]. Defendant makes two arguments here: (1) that Welch's statements were self-serving and the alleged drugs were never recovered, and (2) Welch's statement was stale by the time the Affidavit was made. [*Id.*]. Neither are persuasive.

First, Defendant asserts Welch's statement was "self-serving" and "made while he was facing arrest." [Doc. 225 at 2]. Recall that Detective Madore observed Welch leave the Premises and place "a clear gallon sized zip-lock bag" under the hood of Defendant's SUV, the contents of

which appeared to be methamphetamine. [Doc. 217-1 at 6]. Welch drove away and was later stopped by law enforcement. [*Id.*]. Welch stated that the substance he placed under the hood of the SUV was marijuana, and that he later discarded it when he believed he was being followed by law enforcement. [*Id.*].

As the Government argues, that Welch admitted to possessing a gallon-sized bag of marijuana rather than methamphetamine "hardly defeats the inference of drug activity at the residence." [Doc. 226 at 4]; *see United States v. Woodbury*, 485 Fed. Appx. 58, 60 (6th Cir. 2012) (officers' observations of co-defendant "enter the residence through the front door and later walk out the front door carrying a plastic sandwich bag containing 'an off white chunky substance' that tests showed to be cocaine" was probable cause to believe cocaine was inside the residence). While the Affidavit would certainly have been stronger had the bag been recovered and its contents lab-tested, an affidavit is assessed "on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Moore*, 999 F.3d 993, 998 (6th Cir. 2021) (quoting *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000)).

Nor does the discrepancy between Madore's observation and Welch's later statement undermine the significance of the evidence for probable cause purposes. Regardless of its precise contents, Madore observed Welch leave the Premises with a bag that appeared to contain illegal drugs and that Welch later admitted contained illegal drugs. *See United States v. Church*, 823 F.3d 351 (6th Cir. 2016) ("But drugs are contraband, and the police have a right to seize them, pursuant to a search warrant, wherever they are likely to be present. For the purposes of this warrant, therefore, it did not matter whether the police suspected that [Defendant] possessed marijuana, dealt marijuana, or committed some other crime."). Finally, Defendant cites no caselaw to support

6

the proposition that Welch's statement is a nullity because it was given to law enforcement while he was facing arrest.

Next, Defendant argues the Affidavit was stale with respect to the Welch incident, which occurred fifty-nine days before the search warrant was issued. [Doc. 225 at 2]. Defendant contends the Affidavit failed to demonstrate "ongoing or continuous drug activity during that intervening period." [*Id*]. The Government counters that the May TBI tip, the Welch incident in July, and the September controlled buy show an "accelerating pattern." [Doc. 226 at 4]. According to the Government, the fifty-nine-day gap between their observations of Welch at the Premises and the issuance of the search warrant was "bridged by the controlled purchase that occurred within seventy-two hours of the warrant." [Doc. 226 at 5]. The Government has the stronger argument here.

Whether information in an affidavit is stale "must be determined by the circumstances of each case." *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998). While the length of time between the events in the affidavit and the warrant application is salient, it is not dispositive. *Id.* The Sixth Circuit has repeatedly held that an affidavit's information is seldom stale when the affidavit suggests the crime involved an ongoing drug enterprise. *See United States v. Greene*, 250 F.3d 471, 481 (6th Cir. 2001) (twenty-three-month-old controlled drug purchase from an ongoing enterprise was not stale); *Spikes*, 158 F.3d at 924 (four-year-old evidence combined with recent surveillance of drug activity was not stale). Instead, the staleness analysis turns on "the inherent nature of the crime" and whether it establishes that law enforcement has a "fair probability" of finding evidence at the property listed on the warrant. *Spikes*, 158 F.3d at 923-24 (citing *United States v. Henson*, 848 F.2d 1374, 1382 (6th Cir. 1988)). The Sixth Circuit recognizes four

7

"variables" to guide the staleness determination: (1) the character of the crime; (2) the criminal; (3) the thing to be seized; and (4) the place to be searched. *Id.* at 923.

The Affidavit here describes "a continuing criminal enterprise," *Spikes*, 158 F.3d at 924, logging a TBI tip about drug trafficking at the Premises, surveillance of Welch leaving the Premises in Defendant's vehicle with a bag he admitted contained drugs, and a controlled purchase of methamphetamine directly from Defendant, inside the Premises, all within four months. These averments suggest the Premises was a secure operational base for ongoing drug trafficking.

Moreover, "[w]here recent information corroborates otherwise stale information, probable cause may be found." *Id.* (quoting *Henson*, 848 F.2d at 1381-82). Even if law enforcement's observation of and interaction with Welch were stale, that information was corroborated by a controlled buy at the Premises within 72 hours of the warrant application. Defendant's contention that the Affidavit "set forth no facts demonstrating ongoing or continuous drug activity in [the] intervening period" completely ignores the controlled buy. The Court finds the Affidavit's information regarding Welch's procurement of illicit drugs at the Premises was not stale and, in any event, was refreshed by the subsequent controlled buy inside the Premises.

c. Controlled Purchase

Defendant next takes issue with the Magistrate Judge's analysis of the "monitored and recorded" language describing the controlled buy in the Affidavit. [Doc. 225 at 2-3]. The Affidavit states that law enforcement officers from three agencies "conducted a controlled purchase of a felony amount of methamphetamine from Scott Mooneyham" within 72 hours of the affidavit. [Doc. 217-1 at 5-6]. The Affidavit identifies the Premises as the location of the purchase and states that "[t]he narcotics purchase was monitored and recorded by law enforcement." [*Id.*].

Defendant argues that the description of the controlled buy as "monitored and recorded," without further detail, is "impermissibly conclusory" under *United States v. Frazier*, 423 F.3d 526 (6th Cir. 2005). According to Defendant, *Frazier* speaks to "what kinds of factual descriptions are necessary for a controlled buy to support probable cause." [Doc. 225 at 2-3]. Defendant argues the R&R "sidesteps Defendant's controlled-buy argument by distinguishing *Frazier* on its facts rather than engaging the legal proposition for which it was cited." [*Id.* at 3].

Initially, identifying factual distinctions and similarities is precisely how a court engages with legal propositions in the caselaw. Substantively, Defendant fails to explain why *Frazier* requires suppression, simply insisting that the "monitored and recorded" language is impermissibly conclusory. The Court agrees with the Magistrate Judge that *Frazier* is factually distinguishable.

In *Frazier*, the "bulk of the information contained in the . . . affidavit [came] from confidential sources." *Frazier*, 423 F.3d at 532. The affidavit contained "no facts supporting the confidential informants' reliability" and no evidence corroborating the confidential informants' information. *Id.* It identified two drug transactions by a confidential informant, but failed to note the transactions were recorded. *Id.* The Sixth Circuit also found it significant that neither of the confidential informants witnessed the Defendant dealing drugs in the premises to be searched. *Id.*

The Court finds little parallel between the Affidavit here and that in *Frazier*. Most obviously, the "bulk" of the information in the Affidavit is not hearsay information from confidential sources. Had the Affidavit relied exclusively on unrecorded information from confidential sources, there would be little question that more detail would be necessary. *See Frazier*, 423 F.3d at 532. ("[I]n the absence of any indicia of the informant's reliability, courts

9

insist that the affidavit contain substantial independent police corroboration."). But the "bulk" of the information in the instant Affidavit is from identified law enforcement agents/agencies.

Second, the affidavit in *Frazier* "did not specify that these were controlled buys that were caught on tape." *Id.* at 530. In the absence of a recording, it stands to reason that the magistrate would need more information as to the reliability of the informant or independent police corroboration of the hearsay information. While certainly more detail would have strengthened the Affidavit here, that the controlled buy was "monitored and recorded" told the issuing magistrate several important things. That the buy was "monitored" can only mean that officers observed it in some way in real time. That the buy was "recorded" strongly suggests it was "monitored" through audio or visual means. It also means officers did not have to rely on the informant to confirm the buy took place as planned or described. The reliability of the informant and the other procedures used to conduct the buy are thus far less significant than they were in *Frazier*. And it is well-established that "[a]ffidavits are not required to use magic words[.]" *Allen*, 211 F.3d at 975.

Because Judge Dumitru properly found the Affidavit sufficient to support probable cause to search the Premises, Defendant's objection is **OVERRULED**.

### 2. Nexus Determination

Defendant next objects to the Magistrate Judge's finding that the Affidavit showed a sufficient nexus between alleged criminal activity and the Premises. [Doc. 225 at 3]. Defendant urges that the description of the controlled buy is insufficiently detailed to establish a nexus between drug dealing and the Premises when compared with Sixth Circuit caselaw. He further contends that the three key averments in the Affidavit are individually deficient and cannot establish a nexus between criminal activity and the Premises. Defendant argues the Magistrate Judge "impermissibly bootstraps an inference onto an inference onto another inference" to create a nexus between the Premises and the alleged drug activity. [Doc. 225 at 7].

10

"For an affidavit to establish probable cause, [Sixth Circuit] precedent requires the affidavit to contain a sufficient nexus between the evidence sought and the place to be searched." *United States v. Davis*, 970 F.3d 650, 665-66 (6th Cir. 2020). The Sixth Circuit has held "that a nexus exists between a known drug dealer's criminal activity and the dealer's residence when some reliable evidence exists connecting the criminal activity with the residence." *United States v. Westley*, No. 22-3356, 2023 WL 5377894, *6 (6th Cir. Aug. 22, 2023) (quoting *United States v. Gunter*, 266 F. App'x 415, 419 (6th Cir. 2008)). A drug transaction at a residence is 'inextricably connected to the residence for which the search warrant was sought." *United States v. Ellison*, 632 F.3d 347, 349 (6th Cir. 2011).

Magistrate Judge Dumitru found that "the Affidavit contains three significant averments that tether the Premises to the alleged drug activity over an extended period of time: (1) the TBI's instruction that Defendant was selling methamphetamine from the Premises in May; (2) Mr. Welch leaving the Premises with a Ziploc bag full of methamphetamine and/or marijuana in July; and (3) a recorded controlled purchase from Defendant himself inside the Premises in September." [Doc. 221 at 8]. As the R&R explains – and Defendant concedes – "[t]he Sixth Circuit has held that a *single* purchase of narcotics from a house within 3 days of a search warrant being issued is sufficient to establish probable cause to believe that drugs would still be found at the purchase location." [Doc. 221 at 8] (citing *United States v. Green*, No. 4:12CR370, 2012 WL 5378737, at *5 (N.D. Ohio Oct. 31, 2021), *aff'd*, 572 F. App'x 438 (6th Cir. 2014)). Defendant nonetheless contends that in the cases cited by the Court, "the affidavits provided far more information – and thus were far more reliable – than the conclusory 'monitored and recorded' language used in the affidavit at bar." [Doc. 225 at 3-4].

Defendant's challenge to the nexus finding largely repackages his attack on the sufficiency of the Affidavit, and the Court's analysis is much the same. The Affidavit provided significant details supporting a nexus between the alleged drug activity and the Premises. A special agent of the TBI, identified by name and position, provided information that Defendant was "selling large quantities of methamphetamine" from the Premises. [Doc. 217-1 at 5-6]. Detective Madore conducted surveillance of the premises, observed Welch walk out of the Premises with a bag that appeared to contain drugs, and saw him place it under the hood of Defendant's vehicle, an unusual storage compartment for anything but contraband. Welch later admitted the bag contained drugs and admitted he had discarded it when he thought police were following him. The TBI tip, surveillance of the Premises, and Welch's admissions were then corroborated by the controlled purchase of felony amounts of contraband inside the Premises by a confidential informant, monitored and recorded by two local law enforcement agencies and the TBI.

Taken together, the information in the Affidavit established a sufficient nexus between the Premises to be searched and alleged criminal activity. *See United States v. Christian*, 925 F.3d 305, 309 (6th Cir. 2019) (sufficient nexus where individual was surveilled leaving target residence, and, when stopped, had 20 grams of heroin and denied being at the residence); *cf. United States v. Brown*, 828 F.3d 375, 382-83 (6th Cir. 2016) (failing to show a sufficient nexus where the affidavit offered no evidence defendant distributed narcotics from his home or that any suspicious activity was occurring at the residence). Relying on these three averments is not impermissibly bootstrapping inference upon inference upon inference. Rather, it is recognizing a sequence of events that increasingly demonstrated the connection between criminal activity and the Premises.

That courts have found probable cause established by more detailed affidavits does not analytically require or even suggest that the instant Affidavit was insufficient. More instructive are

12

cases in which the Sixth Circuit has found a lack of nexus between drug activity and the search location. In *United States v. Helton*, 35 F.4th 511, 520 (6th Cir. 2022), the court explained that the only evidence in the affidavit linking drug trafficking to the defendant's home was "stale, anonymous complaints and an unnamed source lacking support for veracity or reliability, all without any police corroboration." *Id.* at 521. The defendant's "presence somewhere near his home with a 'clear baggie' with some type of 'residue' in it and money in small bills also fails to connect his *home* with drug trafficking." *Id.*

Similarly, in *United States v. Laughton*, 409 F.3d 744 (6th Cir. 2005), the officer averred he had observed a controlled purchase, with no seller or location identified. *Id.* at 746-47. He averred he had somehow learned that the defendant kept drugs on his person and in his home. *Id.* And he averred that a CI believed there were more controlled substances at the defendant's residence or on his person, based on his observation. *Id.* While the *Laughton* affidavit attested to the CI's reliability, the Sixth Circuit concluded the warrant "failed to establish any nexus whatsoever between the residence to be searched and the criminal activity attributed to the defendant." *Id.* at 746. The affidavit failed to make any connection between the residence and the facts of criminal activity the officer put in the affidavit. *Id.* at 747. There was no connection between the defendant and the address provided, and no connection between the defendant and any criminal activity that allegedly occurred there. *Id.*

In contrast, the Affidavit here connected drug activity to Defendant's home by, *inter alia*, direct evidence of a controlled purchase, from Defendant and inside the Premises. The Court agrees with the Government that the information provided in the Affidavit establishes "a pattern" and not "an inference chain." [Doc. 226 at 8].

13

Accordingly, the Court finds that the search warrant affidavit established a sufficient nexus between the alleged drug operation and Defendant's Premises. Defendant's objection is **OVERRULED** in this regard.

### 3. Reasonableness of Execution of Search Warrant

Defendant's third objection is to the Magistrate Judge's finding that the execution of the search warrant was reasonable. [Doc. 225 at 6-7]. Defendant contends that he was detained for one hour and forty-three minutes, that the "reprehensible behavior" framework improperly narrows the constitutional inquiry, and that, combined with the inadequacy of the Affidavit, the failure to produce the warrant on request demonstrates that the warrant was executed in an unconstitutional manner. [Doc. 225 at 6-7].

First, Defendant shows that he was detained in the police cruiser for one hour and forty-three minutes, not, as the R&R states, for thirty-eight minutes. [*Id.* at 6]. The Government does not dispute this estimate, arguing the constitutional question is the same either way. To the extent Defendant contends the duration of his detention, standing alone, rendered the search warrant execution unreasonable, he cites no caselaw to support that assertion. In contrast, the Government argues officers were permitted to detain Defendant while conducting the search under *Michigan v. Summers*, 452 U.S. 692 (1981). [Doc. 226 at 9]. *Summers* held that officers executing a search warrant for contraband have the authority to "detain the occupants of the premises while a proper search is conducted." *Id.* at 705. Defendant's detention in the police cruiser was permissible under *Summers* and did not render the execution of the search warrant unreasonable.

Second, Defendant argues the search of the Premises was unreasonable because he repeatedly requested the search warrant while detained in the police cruiser and was not given a copy. [Doc. 225 at 7-8]. Defendant also "objects to the R&R's evaluation of the officer's refusal to provide the warrant under a 'reprehensible behavior framework'" derived from *United States v.*

14

*Thompson*, 667 F. Supp. 2d 758 (S.D. Ohio 2009), "rather than the Fourth Amendment's reasonableness standard." [Doc. 225 at 7].

Initially, Judge Dumitru addressed *Thompson* because it was the primary case Defendant relied on to argue the search was unreasonable. [Doc. 217 at 12-13]. The Magistrate Judge did not replace the Fourth Amendment analysis with any framework in *Thompson*. Rather, he first noted that whether refusing to provide a warrant on request is unreasonable is a question the Supreme Court has left open. [Doc. 221 at 9]; *Groh v. Ramirez*, 540 U.S. 551, (2004) ("Whether it would be unreasonable to refuse a request to furnish the warrant at the outset of a search when, as in this case, an occupant of the premises is present and poses no threat to the officers' safe and effective performance of their mission, is a question that this case does not present."). Defendant does not dispute this assessment of the state of the law. Judge Dumitru then correctly noted that in *Thompson*, the officers' failure to produce the warrant on request was "only one factor among the totality of the circumstances" that made the search unreasonable. [*Id.* at 10].

The facts of *Thompson* are also obviously distinguishable. Law enforcement detained Defendant in the back of the police cruiser for one hour and forty-three minutes while they performed a search of the Premises, and failed to provide him with the warrant on request. The "reprehensible behavior" in *Thompson* included making the defendant sit outside her house in the heat for roughly five hours, naked from the waist down and in plain view of the fourteen officers searching her home, who did not permit her to put on pants or even underwear during their hours-long search, or allow her to have any food or water. *Thompson*, 667 F. Supp. 2d at 765. The Magistrate Judge did not replace the Fourth Amendment analysis with anything, but merely considered *Thompson* in view of the broader, well-settled proposition "that '[t]he reasonableness

of a search and seizure is evaluated based upon the totality of the circumstances.'" [Doc. 221 at 10].

As the R&R recognizes, the Supreme Court has left open the question of whether the refusal to present a warrant on request is unreasonable. [Doc. 221 at 10]. The Magistrate Judge correctly distinguished the caselaw relied on by Defendant. Accordingly, the Court agrees that the execution of the search warrant on the Premises was reasonable under the totality of the circumstances. Defendant's objection is **OVERRULED**.

### 4. Applicability of Good Faith Exception

Defendant objects to Judge Dumitru's finding that the good faith exception would apply here even if a Fourth Amendment violation had occurred. [Doc. 221 at 8–9]. Separately, Defendant takes issue with the Magistrate Judge's findings regarding the neutrality of the issuing magistrate, Judge Turner. Because the neutrality question is part of the *Leon* analysis, the Court considers these objections together.

As the Sixth Circuit has explained, "[s]uppression is not an automatic consequence of a Fourth Amendment violation." *United States v. Moorehead*, 912 F.3d 963, 967 (6th Cir. 2019). The Supreme Court "has created a 'good faith' exception to the exclusionary rule: the introduction of evidence obtained in violation of the Fourth Amendment is permitted in criminal trials when the evidence is obtained in the reasonable good-faith belief that a search or seizure was in accord with the Fourth Amendment." *Id.* (internal citation and punctuation omitted). "Searches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *United States v. Leon*, 468 U.S. 897, at 922 (1984) (internal citations omitted, cleaned up). The "good faith inquiry is confined to the objectively ascertainable question

16

whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* at 922, n.23.

The good faith exception does not apply in four instances: (1) when the affidavit supporting the search warrant contains a knowing or reckless falsity; (2) when the issuing magistrate wholly abandoned their judicial role; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; and (4) when the warrant is so facially deficient that it cannot be reasonably presumed valid. *Laughton*, 409 F.3d at 748. Defendant raises the neutrality issue, as well as a generalized objection that arguably implicates the third and fourth circumstances.

First, Defendant objects to the R&R's discussion of the neutrality of the issuing magistrate, arguing "that it is not just the brevity of the affidavit, but also its lack of sufficient indicia of reliability which makes the cursory review unconstitutional." [Doc. 225 at 8]. To determine whether a warrant is supported by probable cause, "the courts must . . . insist that the magistrate purport to perform his neutral and detached function and not serve merely as a rubber stamp for the police." *Frazier*, 423 F.3d at 537. There is no evidence suggesting Judge Turner failed to read the Affidavit, failed to use his own judgment in issuing the search warrant, or failed to conduct his review in a neutral and detached manner. The record reflects that Detective Madore electronically submitted the Affidavit at around 3:50 p.m. [Doc. 217-1 at 9 and Doc. 221 at 1]. Judge Turner electronically opened the Affidavit at 3:53 p.m. and signed the warrant at 3:57 p.m. [Doc. 217-1 at 2 and Doc. 221 at 2].

While Judge Turner's review appears to have been brief, the Affidavit is neither long nor particularly complex. As the Magistrate Judge noted, "Defendant claims on the one hand that the Affidavit is 'bare bones,' while on the other asserting that Judge Turner didn't spend enough time

17

reviewing it." [Doc. 221 at 13]. And Defendant cites no legal authority for the proposition that the time spent reviewing a warrant application relates to whether the judge abandoned a neutral and detached role. Under the minimal facts presented, the Court cannot find that Judge Turner acted as a rubber stamp for Detective Madore when signing the search warrant. Moreover, the Court a "lack of sufficient indicia of reliability" in the Affidavit did not render Judge Turner's purportedly "cursory" review unconstitutional. [Doc. 225 at 8]. As the Court has already explained, this was not a bare-bones affidavit. It contained sufficient facts to indicate a fair probability that evidence of a crime would be found at the Premises.

Next, Defendant argues that the "Fourth Amendment does not permit reliance on a warrant based on aggregated generalities, but instead on actual indicia of reliability." [Doc. 225 at 8]. Defendant reiterates his position as to the deficiencies in the Affidavit, arguing they are compounded by a "cursory judicial review and the deliberate refusal to provide the warrant during execution." [*Id.*]. Defendant claims the issuance and execution of the warrant "fall squarely within the circumstances *Leon* recognizes as outside the good faith exception." [*Id.*].

"Determining whether the affidavit is so bare bones as to preclude application of the good-faith exception is a less demanding inquiry than the one involved in determining whether the affidavit provided a 'substantial basis' for the magistrate's conclusion of probable cause." *United States v. McPhearson*, 469 F.3d 518, 526 (6th Cir. 2006). Defendant raises no new argument here and cites no caselaw. For the reasons the Court has already explained, the Affidavit was not so bare bones and the warrant was not so facially deficient as to preclude application of the good faith exception. Even if a Fourth Amendment violation occurred, the good faith rule would apply here, and Defendant's objection is **OVERRULED**.

18

## IV.    CONCLUSION

Accordingly, Defendant Scott Austin Mooneyham's Objection [Doc. 225] to the Report and Recommendation [Doc. 225] is **OVERRULED**. Judge Dumitru's findings of fact are **MODIFIED** to reflect that Defendant was detained in the back of the police cruiser for roughly one hour and forty-three minutes. The remaining findings of fact and conclusions of law as set forth in the Report and Recommendation [Doc. 221] are **APPROVED** and **ADOPTED**. Defendant's Motion to Suppress Evidence [Doc. 217] is **DENIED**.

**SO ORDERED**.

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY JR.**
**UNITED STATES DISTRICT JUDGE**

19